**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CASE NO.: _____

CARLO GIUSEPPE CIVELLI and ASTER
CAPITAL S.A. (LTD) PANAMA,

    *Plaintiffs*,

v.

PHILIPPE EMANUEL MULACEK,
MICHELLE MULACEK VINSON, PIERRE
MULACEK, and MAURICETTE MULACEK,

    *Defendants*.

_____/

**THE MULACEK DEFENDANTS' MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA DUCES TECUM OR, IN THE ALTERNATIVE, FOR
<u>ALTERNATIVE SERVICE OF THE SUBPOENA DUCES TECUM</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ i

PRELIMINARY STATEMENT ......................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................................. 3

    I.    The Mulaceks' Prior Attempts To Serve A Deposition Subpoena On Danton .................... 3

    II.    The Mulaceks Finally Find And Serve Danton With A Deposition Subpoena ................... 5

    III.    Danton Fails To Appear At His Deposition ........................................................................ 6

ARGUMENT ..................................................................................................................................... 7

    I.    The Subpoenas Were Properly Served And Danton Should Be Compelled To Appear For His Deposition ................................................................................................................ 8

    II.    In The Alternative, This Court Should Allow The Mulaceks To Serve Danton By Alternative Means ............................................................................................................... 10

CONCLUSION ................................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Bozo v. Bozo*,
  2013 WL 12128680 (S.D. Fla Aug. 16, 2013) ......................................................................... 8

*Civelli, et al. v. Phillipe Mulacek, et al.*,
  Case No. 4:17-cv-03739 (S.D. Tex.) ....................................................................................... 1

*Diaz v. Chapters Health Sys., Inc.*,
  2020 WL 203157 (M.D. Fla. Jan. 6, 2020) ........................................................................... 10

*In re Falcon Air Exp. Inc.*,
  2008 WL 2038799 (Bankr. S.D. Fla. May 8, 2008) ................................................................ 8

*Matter of Certain Complaints Under Investigation by an Investigating Comm. of Jud. Council of the Eleventh Cir.*,
  783 F.2d 1488 (11th Cir. 1986) ............................................................................................... 7

*Reiterman v. Abid*,
  2019 WL 6114945 (M.D. Fla. Nov. 18, 2019) ...................................................................... 10

*Saadi v. Pierre A Maround & Maroun's Int'l, LLC*,
  2021 LEXIS 258625 (M.D. Fla. Mar. 22, 2021) ................................................................... 10

*SEC v. Rex Venture Group, LLC*
  2013 WL 1278088 (M.D. Fla. Mar. 28, 2013) ........................................................................ 8

*Smith v. Diamond Dev. & Invs., Inc.*,
  2014 WL 11930618 (N.D. Ga. Jan. 10, 2014), *report and recommendation adopted*, 2014 WL 12013445 (N.D. Ga. Jan. 28, 2014) ....................................................................................... 9

*State Farm Mut. Auto. Ins. Co. v. Maistrenko*,
  2019 WL 7790855 (S.D. Fla. Dec. 20, 2019), *report and recommendation adopted*, 2020 WL 486271 (S.D. Fla. Jan. 30, 2020) ...................................................................................... passim

*TracFone Wireless, Inc. v. SCS Supply Chain LLC*,
  330 F.R.D. 613 (S.D. Fla. 2019). .......................................................................................... 10

*Wood v. Progressive Select Ins. Co.*,
  2022 WL 18023480 (S.D. Fla. May 17, 2022) ....................................................................... 7

Defendants Philippe Emanuel Mulacek ("Phil"), Michelle Mulacek Vinson, Pierre Mulacek and Mauricette Mulacek (collectively, the "Mulaceks") respectfully submit this motion to compel the compliance of William Danton ("Danton"), a Florida resident, with a lawfully served subpoena that required his attendance at oral depositions; the most recent deposition was scheduled for February 13, 2023, at the Miami, Florida offices of Boies Schiller Flexner, LLP ("BSF").[1]

## PRELIMINARY STATEMENT

Danton is a critical witness in a lawsuit that is currently pending in the Southern District of Texas (the "Texas Action"), *Civelli, et al. v. Phillipe Mulacek, et al.*, Case No. 4:17-cv-03739 (S.D. Tex.) (the "Texas Action").  The Mulaceks are Defendants and Counterclaim-Plaintiffs in the Texas Action, and Danton is a representative of Carlo Civelli ("Civelli"), one of the Plaintiffs and Counterclaim-Defendants in that same action.

Danton has information critical to the Mulaceks' defenses and counterclaims in the Texas Action, and the court overseeing the Texas Action has ordered that Danton be deposed. Accordingly, the Mulaceks have been chasing Danton for over two years – from Maine to Florida to Massachusetts to Maine and back to Florida again – in an attempt to serve him with a simple deposition subpoena.  Throughout this period, Danton has been in regular contact with Civelli's attorneys, but has intentionally evaded service of the Mulaceks' subpoenas, stating in one email to counsel that he did "not want to make time in [his] schedule to attend to this deposition," and that he "choose[s] not to give a deposition in this matter."

---

[1] Submitted herewith are the Declaration of David Tate, sworn to on February 17, 2023 ("Tate Decl."), the Declaration of Zachary Carleton, sworn to on February 17, 2023 ("Carleton Decl."), and the Declaration of Jenny H. Kim, sworn to on February 17, 2023 ("Kim Decl.").

1

The Mulaceks' diligence finally paid off on October 1, 2022, when a private investigator retained by the Mulaceks saw Danton entering a residence in Dania Beach, Florida (the "Dania Residence").  The private investigator knocked on the front door of the Dania Residence soon after, and Danton's wife – Mrs. Anastasia Danton – answered.  When the private investigator identified himself, Mrs. Danton claimed that she was not Mrs. Danton.  It was only after she was confronted with a photo of herself with Danton taken from social media, and a copy of her vehicle registration, that Mrs. Danton conceded her identity.  She still refused to bring Danton to the door.  Accordingly, the private investigator left the subpoena and the witness fee payment with Mrs. Danton.  (All of this was captured on video.)  Under established law from this District as detailed below, this constituted proper service under Federal Rule of Civil Procedure 45.

However, in an abundance of caution (which proved prudent given Danton's continued refusal to appear for a deposition), the Mulaceks tried to effectuate in-hand service on Danton. From October 2022 to January 2023, the Mulaceks' private investigator attempted to locate Danton – who had left his Dania Residence – in Maine, Massachusetts and Florida.  Finally, on January 22, 2023, Danton reappeared at the Dania Residence, and when he emerged from his home on January 23, the private investigator once again identified himself and tried to serve Danton, who ran away from the private investigator.  The private investigator – while Danton was still in view – informed Danton that he was leaving the subpoena on Danton's car.  This is also all on video, and confirms that Danton was again properly served in January.  This too was proper service under the law of this District.

Neither Danton nor his Florida counsel appeared for his deposition, which was scheduled for February 13 at BSF's Miami offices.  Under established law, the subpoenas served in October and January were "reasonably calculated to ensure receipt of the subpoena by the deponent," and

2

therefore, properly served. *State Farm Mut. Auto. Ins. Co. v. Maistrenko*, 2019 WL 7790855, at *3 (S.D. Fla. Dec. 20, 2019) (quotations omitted), *R.& R. adopted*, 2020 WL 486271, (S.D. Fla. Jan. 30, 2020). Danton has flouted the judicial system long enough, and the Mulaceks respectfully request that the Court grant their motion to compel Danton's compliance with the subpoena and ensure that he attends his oral deposition. Alternatively, the Mulaceks request an order allowing alternative service on Danton.

## FACTUAL BACKGROUND

### I.      The Mulaceks' Prior Attempts To Serve A Deposition Subpoena On Danton

Plaintiff Civelli filed the Texas Action on December 11, 2017, in the Southern District of Texas. Civelli has referred to Danton as his personal representative and someone that he retained to assist him with the Texas Action. In that role, Danton has: (1) convinced a former Mulacek attorney to provide false testimony for, and privileged and confidential documents to, Civelli; (2) facilitated Civelli's unlawful efforts to sell investment interests that are owned by the Mulaceks; and (3) attempted to taint the testimony of experts that were retained by the Mulaceks. (Kim Decl. ¶¶ 3-7). Danton also appears on hundreds of emails that are relevant to this action; most of those emails include Civelli, and some of those emails even involve Civelli's counsel. (*Id.* ¶ 7).

In or about March 2021, the Mulaceks requested that Plaintiffs produce Danton for a deposition. (*Id.* ¶ 8). Plaintiffs refused, stating that Danton was not an employee or an agent of Plaintiffs, and thus, Plaintiffs had no ability to accept service on Danton's behalf or produce him for a deposition. (*Id.*).

On April 2, 2021, Judge Hughes of the Southern District of Texas held a discovery hearing where the Mulaceks informed the Court of their inability to locate Danton to serve him with a subpoena. In response, Judge Hughes instructed Civelli's counsel to provide the Mulaceks with Danton's address. (Kim Decl. Ex. B at 82:19). In a subsequent order on the

3

same day, Judge Hughes directed that "[Phil] Mulacek may subpoena William Danton – with *Civelli's assistance.*" (Kim Decl. Ex. C at 2, ¶ 3; emphasis added). Despite this order, the only assistance received from Civelli's counsel was Danton's cell phone number and a copy of Danton's driver's license, which identified a Maine address. (Kim Decl. ¶ 10).

The Mulaceks attempted to serve Danton at the Maine address, but no one matching Danton's description seemed to reside at that address. (*Id.*). For the next five months, the Mulaceks – with the assistance of a private investigator – attempted to locate Danton using the Maine address as a starting point, but the effort was unsuccessful.[2] In September 2021, Judge Hughes recognized that Civelli's "assistance" in the interim months had been "meager at best," and ordered Civelli to provide "unquestionable and diligent assistance" in the Mulaceks' attempts to serve Danton. (Kim Decl. Ex. D at 1, ¶¶ 1, 3). That assistance was never provided. (Kim Decl. ¶ 15).

Making clear that he was purposefully evading service, in December 2021, Danton sent an email to Civelli and his counsel, stating:

> I do not want to make time in my schedule to attend to this deposition. I have been unavailable as I have said in the past and will continue to be unavailable. In fact – I do not intend to return to the USA anytime in the near future . . . . At this

---

[2] In August 2021, the United States District Court for the District of Maine denied the Mulaceks' motion for alternate service. *Civelli v. J.P. Morgan Securities*, LLC, 2:21-mc-00163-JCN, at *2 (ECF. No. 9) (Aug. 5, 2021) (Kim Decl. Ex. O). In so holding, the Court found that the record lacked any "evidence to suggest Mr. Danton has recently been residing in Maine." *Id*. Indeed, the Court found that the evidence had established "that when service was attempted on three occasions in April 2021, no vehicles were present, and no lights were on in the house." *Id*. The Court also noted that around that same time, "a tenant of the adjacent property reported there had been no activity at the home." *Id*. In stark contrast, the Mulaceks' private investigator confirmed that Danton was at the Dania Residence. (Tate Decl. ¶ 4). Just hours before he effectuated substitute service in October 2022, the private investigator saw Danton enter the Dania Residence through the side door and confirmed that a car parked on the property was registered to Danton's wife. (*Id.*) When the private investigator personally served Danton in January 2023, he placed the subpoena on the same vehicle registered to Danton's wife after Danton had emerged from the Dania Residence and ran away from him. (*Id.* ¶ 9).

4

>stage in my life – I choose not to give a deposition in this matter as I regard it a waste of my time and money.

(Kim Decl. Ex. E).

## II. The Mulaceks Finally Find And Serve Danton With A Deposition Subpoena

Despite the lack of assistance from Plaintiffs, the Mulaceks continued their efforts to find and serve Danton. Finally, after almost two years of searching, on October 1, 2022, a private investigator retained by the Mulaceks saw Danton enter a residence at 141 N.E. 3rd Street in Dania Beach, Florida through a side patio door. (Tate Decl. ¶ 4). He also saw a vehicle registered to Mrs. Anastasia Danton, Danton's wife, near the residence. (*Id.*). After seeing Mr. Danton enter the Dania Residence, the private investigator approached the house, knocked on the door, and waited for an answer. (*Id.* ¶ 5). Mrs. Danton answered the door and the private investigator identified himself and informed Mrs. Danton that he had a subpoena to serve on Danton. (*Id.*). Mrs. Danton denied her identity, and when asked about her car parked in the driveway, she claimed that they only allowed the Dantons to park their cars at their home. (*Id.*).

Mrs. Danton reluctantly conceded her identity only after the private investigator showed her a picture of herself with Danton taken from a social media post and provided her with a copy of her vehicle registration information for the vehicle parked in the driveway. (*Id.*). However, Mrs. Danton still refused to bring Danton to the door. (*Id.*). Accordingly, the private investigator presented Mrs. Danton with the subpoena and a check tendering fees for one day's attendance at a deposition, which she accepted. (*Id.*).

Just days after this encounter, the Dantons left their Dania Residence and the Dania Residence went dark. (*Id.* ¶ 6; Carleton Decl. ¶ 5). The private investigator confirmed his belief that the Dantons had left the Dania Residence, and that it did not look as if the Dantons would return in the near term. (Tate Decl. ¶ 6; Carleton Decl. ¶ 5). Accordingly, the Mulaceks decided

to try and re-serve Danton with another subpoena wherever Danton could be found. The Mulaceks' private investigator tracked down leads in Maine and Massachusetts with no luck, and then – in January 2023 – returned to surveil the Dania Residence. (Carleton Decl. ¶ 7; Tate Decl. ¶ 8).

On Sunday, January 22, 2023, at around 10:00 p.m., the private investigator spotted Danton inside of the Dania Residence but did not approach the house because Florida law does not allow service of process on Sundays. (Tate Decl. ¶ 8). Then, on Monday January 23, 2023, the private investigator witnessed Danton walking outside of the same residence. (*Id.* ¶ 9). The private investigator exited his vehicle and approached Danton. (*Id.*). Danton then attempted to (unsuccessfully) evade service by running away from the private investigator. (*Id.*). In response, the private investigator informed Danton that he was a process server and had some documents for him, and that running would not do him any good. (*Id.*). The private investigator also told Danton that he would leave the subpoena on his car right outside of his house, which the private investigator did. (*Id.*).

The entirety of the January 23 encounter was videotaped. (Tate Decl. Ex. 1). As Danton had already received a witness fee payment in October 2022, the private investigator did not leave another check with the subpoena.

### III. Danton Fails To Appear At His Deposition

The subpoena served in January directed Danton to attend an oral deposition at BSF's Miami office on February 13, 2023, at 9:30 a.m. (Kim Decl. Ex. G). Prior to that date, numerous attempts were made to contact Danton or his counsel to ensure his compliance.

The Mulaceks' counsel sent an email to Danton at the only known email address belonging to him; however, the email bounced back. (Kim Decl. Ex. H). Since Civelli's counsel had had recent communications with Danton, the Mulaceks requested an updated email address

and cell phone number for Danton. (Kim Decl. ¶ 22). Plaintiffs' counsel claimed that they did not have an updated email address for Danton and refused to provide an updated cell phone number. (Kim Decl. Ex. I). However, Plaintiffs' counsel did provide their opinion that Danton had not been properly served and referred the Mulaceks to Mr. Louis Thaler ("Thaler"), who was Danton's "personal attorney" in Florida. (Kim Decl. Exs. I, J).[3]

When Thaler finally responded to the Mulaceks' inquiries,[4] he parroted Plaintiffs' counsel erroneous belief that Danton had not been properly served and represented that Danton would not be appearing for a deposition. (Kim Decl. Ex. L). Thaler also confirmed that he was "Mr. Danton's personal attorney in Florida." (*Id.*).

Because Danton was properly served in October, and then again, in January, the deposition went forward on February 13, 2023. However, Danton did not appear, and his non-appearance was recorded. (Kim Decl. Ex. N).

## ARGUMENT

While a subpoena is itself a court order and a witness who "fails to comply without filing a timely motion to quash, . . . may be found in contempt of court, with no need for any further court order," *Matter of Certain Complaints Under Investigation by an Investigating Comm. of Jud. Council of the Eleventh Cir.*, 783 F.2d 1488, 1495 (11th Cir. 1986), the recommended practice is for the enforcing party to first move for a court order demanding compliance with the subpoena. *See Wood v. Progressive Select Ins. Co.*, 2022 WL 18023480, at

---

[3] The Mulaceks had previously deposed Thaler because Thaler had refused to provide Danton's last known address to the Mulaceks when they had been attempting to serve Danton in 2021. (Kim Decl. ¶ 22 n.2).

[4] After getting the Mulaceks' counsel's email address incorrect three times, Thaler finally communicated this message to the Mulaceks' counsel on February 8, 2023. (Kim Decl. ¶ 24 n.3).

7

*1 (S.D. Fla. May 17, 2022) (quoting Fed. R. Civ. P. 45(g) advisory committee's note to 2013 amendment) ("Importantly, '[i]n civil litigation, it would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena.'").

Consistent with this practice, the Mulaceks now seek an order of this Court compelling Danton to appear for a deposition.

**I.  The Subpoenas Were Properly Served And Danton Should Be Compelled To Appear For His Deposition**

Courts in this District have routinely held that a subpoena is properly served under Rule 45 if it was served in a manner that was "reasonably calculated to ensure receipt of the subpoena by the deponent." *Maistrenko*, 2019 WL 7790855, at *3 (quotations omitted).[5] Contrary to this law, Thaler, Danton's Florida counsel, has asserted that service on Danton was improper because "Mr. Danton was not personally handed the subpoena and that no witness fee payment was provided." (Kim Decl. Ex. L). However, Danton's counsel is both legally and factually incorrect.

First, as stated above, Mrs. Danton was provided with the witness fee payment on October 1, 2022, along with the subpoena. (Tate Decl. ¶ 5). No authority exists for the proposition that Danton was somehow entitled to yet another payment for his appearance.

---

[5] Indeed, so long as the manner of service was likely to provide notice to the witness, courts in this District have allowed substitute service of a Rule 45 subpoena. *Bozo v. Bozo*, 2013 WL 12128680, at *1 (S.D. Fla Aug. 16, 2013) (holding that service of a subpoena upon a maid "who told the process server she lived at [the witness's] home" was sufficient under Rule 45); *In re Falcon Air Exp. Inc.*, 2008 WL 2038799, at *4 (Bankr. S.D. Fla. May 8, 2008) (service of a subpoena upon a witness's spouse at a residence owned by the witness was proper); *see also S.E.C. v. Rex Venture Group, LLC*, 2013 WL 1278088, at *3 (M.D. Fla. Mar. 28, 2013) (holding service of a subpoena by FedEx and certified mail put the witness on notice and was therefore proper under Rule 45).

Second, Danton was approached for personal service and then ran away. Accordingly, the private investigator left the subpoena where it could be found, verbally informing Danton (as he was running away) that it was on his car. Once again, no authority exists for the proposition that the private investigator needed to run Danton down (and, what, tackle him?) in order to put the subpoena in his hand. *See Smith v. Diamond Dev. & Invs., Inc.*, 2014 WL 11930618, at *4-5 (N.D. Ga. Jan. 10, 2014) (collecting cases and holding that service of the complaint complied with Rule 4's personal service requirement where the defendant attempted to evade service by retreating into his home and process server notified him through conversation that "she was serving process on [the defendant] by leaving the papers on his front porch"), *R. & R. adopted*, 2014 WL 12013445, (N.D. Ga. Jan. 28, 2014).

Third, and in any event, "the weight of authority in the Southern District of Florida indicates that personal services is *not* required." *Maistrenko*, 2020 WL 486271, at *2. Indeed, *Maistrenko*, a 2019 decision from this Court, is directly on point. There, this Court held that service of the subpoena was reasonably calculated to reach the witness where "(1) the process server identified . . . and confirmed" the witness's address; (2) the individual who "answered the door at the address . . . never disputed the fact that the [witness] resided at that location; and (3) the process server placed the subpoena in that individual's hands." *Maistrenko*, 2019 WL 7790855, at *3. Here, the Mulaceks did even more: (1) the process server confirmed that Danton was physically present at the Dania Residence before attempting service; (2) Mrs. Danton answered the door and did not dispute that Danton resided at that location; (3) Mrs. Danton took the subpoena and witness fee payment into the residence after the process server handed them to her; and, (4) in January, the process server made personal contact with Danton, told Danton he was being served with process, and left the subpoena for Danton in a place he

9

was certain to find it. (Tate Decl. ¶¶ 5, 9). The subpoena was then forwarded to Danton's personal attorney, Thaler, on January 25, 2023, (Kim Decl. Ex. K), who admitted that he had discussed the subpoena with Danton, (Kim Decl. Ex. L). "[T]here can [thus] be no question that the means utilized by [the Mulaceks in serving the October and January subpoenas] here complied with the service requirements of Rule 45." *Maistrenko*, 2019 WL 7790855, at *3.

Danton had more than sufficient notice of the subpoena and he was given a check to cover his costs for traveling to the deposition. Under recent decisions from this District, service was proper under Rule 45 and Danton should be compelled to appear for his deposition, on a date no later than March 31, 2023.

## II. In The Alternative, This Court Should Allow The Mulaceks To Serve Danton By Alternative Means

In the alternative, should the Court decide that Danton was not properly served with the October and January subpoenas, the Mulaceks respectfully request that the Court issue an order permitting the Mulaceks to serve Danton by alternative means. *See Saadi v. Pierre A Maround & Maroun's Int'l, LLC*, 2021 LEXIS 258625, at *4-5 (M.D. Fla. Mar. 22, 2021). Florida courts have allowed alternate service where, as here, the witness has evaded service, *see Reiterman v. Abid*, 2019 WL 6114945, at *1-2 (M.D. Fla. Nov. 18, 2019), or in an effort to move the process of service along "expeditiously." *Diaz v. Chapters Health Sys., Inc.*, 2020 WL 203157, at *3 (M.D. Fla. Jan. 6, 2020); *TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 616 (S.D. Fla. 2019).

As outlined in the Kim, Tate, and Carleton Declarations (and summarized *supra* at Fact Sections I and II), Danton has concededly been evading service for almost two years. Further, the Mulaceks anticipate that the remaining fact depositions in the Texas Action, which has been pending for over five years, will be completed in the next few months. Given the need to bring

10

the Texas Action to trial, and Danton's purposeful evasion of service, the Mulaceks request that they be permitted to serve Danton by: (1) affixing the subpoena to the Dania Residence's front door (or if the gate around the Dania Residence is locked, the front gate); and (2) sending a copy of the subpoena by Federal Express to the Dania Residence. As required by Courts in this District, these proposed methods of service are "reasonably calculated to ensure receipt of the subpoena by the deponent." *Maistrenko*, 2019 WL 7790855, at *3. In fact, this will be the third and fourth copies of the subpoena received by Danton.

## **CONCLUSION**

For all of the reasons stated herein, the Mulaceks respectfully request that this Court grant the motion to compel and order Danton to appear for an oral deposition or, in the alternative, allow the Mulaceks to serve Danton with a subpoena for an oral deposition by affixing a copy of the subpoena on Danton's Dania Residence and mailing a copy of the subpoena by Federal Express to the Dania Residence.

Dated: February 17, 2023

                                                                                        Respectfully submitted,

                                                                                        */s/ Laselve E. Harrison*
                                                                                        Laselve E. Harrison
                                                                                        Fla. Bar. No. 112537
                                                                                        BOIES SCHILLER FLEXNER LLP
                                                                                        100 SE 2nd Street, Suite 2800
                                                                                        Miami, FL 33131
                                                                                        lharrison@bsfllp.com
                                                                                        Tel: (305) 539-8400

                                                                                        Jenny H. Kim
                                                                                       BOIES SCHILLER FLEXNER LLP
                                                                                        55 Hudson Yards
                                                                                        New York, New York 10001

jkim@bsfllp.com
Tel: (212) 446-2354
*Pro hac vice motion pending*

*Counsel for the Mulaceks*